# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Elke Specker,<br><br>              Plaintiff,<br><br>v.<br><br>Michael Kazma, an individual; Mako Shark Diving, LLC, a California limited liability company; Yellow Charter Boat, Inc., a California corporation; In Personem CETUS SPECULA, In Rem,<br><br>              Defendants. | Case No.:  15cv2567 NLS (JMA)<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO DISMISS BY MICHAEL KAZMA AND MAKO SHARK DIVING, LLC [Dkt. No. 30]; and**<br><br>**(2) DENYING MOTION TO DISMISS BY YELLOW CHARTER BOAT, INC. AND CETUS SPECULA [Dkt. No. 31].** |

Plaintiff Elke Specker filed this case for negligence against all Defendants for a shark bite she suffered while she participated in an out-of-cage shark diving expedition led by Michael Kazma. She alleges that admiralty and maritime jurisdiction is proper in this court under Federal Rule of Civil Procedure 9(h). Defendants disagree. Kazma, and his company Mako Shark Diving, LLC (Mako) (collectively, Kazma), filed a motion to dismiss for lack of subject matter jurisdiction. Yellow Charter Boat, Inc. (Yellow Charter), from whom Kazma chartered the boat, and the vessel the Cetus Specula, also filed a motion to dismiss. The court reviewed all papers and vacated oral argument. For the following reasons, the court **DENIES** both motions to dismiss.

## I.   Procedural History.

Specker filed her complaint on November 16, 2015. Yellow Charter and Cetus Specula filed an answer on January 5, 2016. Kazma filed an answer on January 8, 2016. The parties consented to magistrate judge jurisdiction. Kazma then filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Yellow Charter and Cetus Specula also filed a Rule 12(b)(1) motion. In its motion Yellow Charter included a request under Rule 12(b)(6) to dismiss the complaint against it for failure to state a claim.

## II.   Facts Alleged in the Complaint.

Specker names Kazma, Mako and Yellow Charter as in personam defendants. Compl. ¶¶5-7. She names the vessel—the Cetus Specula—as an in rem defendant. Compl. ¶ 8. She alleges the Cetus Specula is a passenger vessel engaged in commerce within the jurisdiction of this court. *Id.*

In her claim for negligence, Specker alleges that Kazma advertises safe "out of cage encounters with Mako and Blue sharks in San Diego, California." Compl. ¶ 11. He also advertises that "Mako Mike" Kazma is a "shark behavioral expert and professional shark feeder." *Id.* Relying on these representations, Specker alleges that she paid a fare to be a passenger on the Cetus Specula, to participate in a shark diving expedition with Kazma. *Id.*

On June 13, 2015, Kazma took a group of divers out on navigable waters aboard the Cetus Specula. Compl. ¶ 10. He chummed the waters and then hand-fed sharks. *Id.* Specker filmed the underwater shark activity. *Id.* But she believes that Kazma was intoxicated during the shark feeding activity, and thus improperly and negligently directed the divers, including Specker, to an unsafe area. *Id.* She alleges that to feed a swimming mako shark, Kazma held the bait so that it led a shark directly toward Specker. *Id.* That shark bit Specker. *Id.*

As a result of the bite, Specker says she sustained multiple severe permanent injuries and disfigurement, as well as emotional distress. Compl. ¶ 12. She then alleges the bite was a "direct and proximate result of the Cetus Specula's negligence and/or gross negligence" in the following respects:

    a. By having the dive leader and supervisor, Defendant Kazma, in an intoxicated state;
    b. In creating and maintaining an unsafe condition;
    c. In failing to operate and/or maintain the CETUS SPECULA in a safe condition; and
    d. In failing to properly hire, train and supervise its crew and/or vessel staff.

Compl. ¶¶ 12, 14-15 (emphasis added). But Specker does not expressly allege—as she does with the Cetus Specula—that her bite and injuries were a direct and proximate result of the negligence or gross negligence of any of the in personam defendants. Finally, Specker alleges that the Cetus Specula did not carry proper first aid or medical equipment. Compl. ¶ 13.

Specker also alleges a second claim for a maritime lien only against the Cetus Specula, alleging that it is jointly and severally liable for all damages that Specker sustained. Compl. ¶¶ 18-19.

///
///
///

### III. DISCUSSION

#### A. Lack of Diversity Jurisdiction.

In the complaint Specker asserts original jurisdiction in this court under diversity. But she concedes this court does not have diversity jurisdiction under 28 U.S.C. § 1332, and says the allegation should be stricken from the complaint. Accordingly, the court **STRIKES** paragraph no. 2 from the complaint.

#### B. Subject Matter Jurisdiction.

##### 1. Legal Standard

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff's allegations are not presumed to be truthful, and the plaintiff has the burden of proof that jurisdiction exists. *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corporation*, 594 F.2d 730, 733 (9th Cir.1979). "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency," requiring the plaintiff to "present affidavits or any other evidence necessary to satisfy its burden." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989).

##### 2. Admiralty or Maritime Jurisdiction.

Federal courts have original jurisdiction to hear admiralty and maritime claims regarding contracts and torts. *See* U.S. Const. art. III § 2, cl.1; 28 U.S.C. § 1333(1). To invoke federal admiralty jurisdiction for a tort claim, a claimant must satisfy (1) a locality test; and (2) a relationship, or nexus, test to show a connection between the incident and maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co. (Grubart),* 513 U.S. 527, 534 (1995). The relationship test requires two determinations: (a) "whether the incident has a potentially disruptive impact on maritime commerce;" and (b) "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (internal citations and quotations omitted).

/ / /

### a. Locality Test.

The locality test is met if the tort occurred on navigable water or if an injury suffered on land was caused by a vessel on navigable water. *Id.* For determining admiralty jurisdiction, the tort occurs "in the place where the injury occurs." *Taghadomi v. U.S.*, 401 F.3d 1080, 1084 (9th Cir. 2005). Here, Ms. Specker was attacked while scuba diving in the navigable waters off the coast of Southern California. Thus the locality test is satisfied. *See Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 255 (1972) (noting that if locality was the only inquiry admiralty jurisdiction would lie, for example, where "a swimmer at a public beach is injured by another swimmer or by a submerged object on the bottom").

### b. Relationship Test.

The relationship test requires consideration of the type of incident involved at an "intermediate" level of generality. *Grubart,* 513 at 538. For example, in *Grubart*, the Supreme Court found maritime jurisdiction for claims brought by property owners whose buildings were damaged by a flood caused by the alleged faulty replacement of wooden bridge pilings in the Chicago River. *Id.* The court described the incident as "damage by a vessel in navigable water to an underwater structure." *Id.* at 539. In *Gruver v. Lesman Fisheries, Inc.*, the Ninth Circuit found admiralty jurisdiction for a claim regarding "a fight aboard a ship between a seaman and his former maritime employer over unpaid wages." 489 F.3d 978, 982 (9th Cir. 2007). The court described the incident as "an assault on a seaman by his former maritime employer aboard a vessel in navigable waters." *Id.* In *Sisson v. Ruby*, the Supreme Court found maritime jurisdiction in a case where a fire started in the laundry room of a yacht docked at a marina, which damaged other yachts. 497 U.S. 358, 363 (1990). The court characterized the claim as "a fire on a vessel docked at a marina on navigable waters." *Id.*

Specker asserts that viewed from an intermediate level, the incident here concerns "a shark bite occurring during a guided-dive from a dive boat in the open ocean because of the guide's negligence and the negligence of the vessel." Opp'ns, p.5. The court finds

that description too specific.  Applying terms common to other maritime cases, this court views the incident here as an injury suffered by a scuba diver in navigable waters after diving off of a commercial vessel.  *See In re Petition of Germain*, 2016 WL 3083428 (2nd Cir. June 1, 2016) (finding the description "an injury to a recreational passenger who jumped from a recreational vessel in a shallow recreational bay of navigable waters" is too specific and that the proper description is "injury to a passenger who jumped from a vessel on open navigable waters").

>        i.        *Potential to Disrupt Maritime Commerce.*

The first part of the relationship test goes to "potential effects, not to the particular facts of the incident." *Grubart*, 513 U.S. at 538 (citation and quotation marks omitted). The inquiry, considered at an "intermediate" level of generality, focuses "not on the specific facts at hand but on whether the general features of the incident were likely to disrupt commercial activity." *Id*. (citation and quotation marks omitted); *see Taghadomi*, 401 F.3d at 1086 ("As to the first factor, the Ninth Circuit has cautioned that the type of incident involved is 'to be considered at an 'intermediate' level of generality.'").

The potential effects on maritime commerce when a scuba diver suffers an injury in navigable waters after diving off of a commercial vessel include the possible diversion of another vessel to help tend to the injured diver.  For example, if a diver was injured and needed to be transported to shore immediately yet all other divers had not yet returned to the boat, another vessel could either take the injured diver to shore, or could collect the remaining divers once they surface.  *See, e.g., Strickert v. Neal*, 2015 WL 7737312 (D. Haw. Nov. 30, 2015) (leaving snorkelers stranded on a rock to be recovered by the Coast Guard while returning other dive excursion participants to shore).  Another potential effect on maritime activity could be the loss of at least one crewmember who is left to focus on the injured diver and who is not available for other duties.  *See, e.g., Gruver*, 489 F.3d at 983 (finding a disruptive effect on maritime commerce based on boat being deprived of deckhand for fishing trips).  And another potential effect could include collisions of vessels due to a distracted crew.  *See, e.g., Germain*, 2016 WL 3083428 at

*11 ("the potential effects on maritime commerce of an injury to a passenger who jumped from a vessel on open navigable waters include collisions with commercial vessels caused by distracted crews and disruption to maritime traffic caused by maritime rescue."). And finally, the "potential effect" rule applies to recreational vessels. *See, e.g., In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1129–30 (9th Cir. 2009) (finding a potentially disruptive effect of a maritime emergency response to sustain admiralty jurisdiction for two women thrown off of jet skis in the bay).

The Supreme Court acknowledges that requiring only a potential for harm "reflects customary practice in seeing *jurisdiction as the norm* when the tort originates with a vessel in navigable waters." *Grubart*, 513 U.S. at 547 (emphasis added). In other words, failing to find jurisdiction when a tort occurs in navigable waters is the *exception. Id.* Accordingly, this court finds the first part of the relationship test is satisfied because tending to Specker's injury had a potential impact on maritime commerce.[1]

        *ii.* *Substantial Relationship to Traditional Maritime Activity.*

The second part of the relationship test requires "the tortfeasor's activity [to] be 'so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply.'" *Gruver*, 489 F.3d at 983 (quoting *Grubart*, 513 U.S. at 539). The relevant activity must be characterized generally, "but not so generally as to ignore the maritime context." *Id*. at 986 (citing *Grubart*, 513 U.S. at 541 -42). While not "every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what … *ordinarily that will be so*." *Grubart*, 513 U.S. at 543 (emphasis added). The Supreme Court added that it "is not fatal criticism" that "virtually 'every activity involving a vessel on navigable waters' would be 'a traditional maritime activity sufficient to invoke maritime jurisdiction." *Id*. at 542; *see*

---

[1] In fact, there may have been an actual effect on maritime commerce here, as Specker says in both oppositions that the Coast Guard was called. Opp'ns, p.2. Because that statement is not supported by declaration, the court does not rely on it here.

*Taghadomi,* 401 F.3d at 1087 ("The Supreme Court emphasized in *Grubart* that the nexus test is not meant to exclude broad swathes of activity; it wrote approvingly of the notion that 'virtually every activity involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction.'").

Here, Kazma urges the court to characterize Specker's activity as "swimming with fish."[2] Kazma Mtn, p.5. This proposed characterization is too myopic because it only concerns the activity immediately surrounding the bite. Before *Grubart*, courts tended to look at only the immediately preceding activity to the injury. If the court characterized the activity as scuba diving with sharks, it likely would not bear a sufficient relationship to a traditional maritime activity. *See Taghadomi*, 401 F.3d at 1086-87 (hypothesizing that pre-*Grubart* a case of recreational kayaking might not bear a sufficient relationship to a traditional maritime activity). But that is not the relevant test.

The *Taghadomi* court applied the substantial relationship test as set forth in *Grubart* and concluded that because the defendant Coast Guard's search-and-rescue operation for the kayakers showed a substantial relationship to traditional maritime activity, all the plaintiffs' claims fell within admiralty jurisdiction. *See Taghadomi*, 401 F.3d at 1087. Thus, to satisfy the substantial relationship test all that is required is that one of the alleged tortfeasors be engaged in a traditional maritime activity, and that such activity is claimed to have been a proximate cause of the incident. *Grubart*, 401 F.3d at 541; *McClenahan v. Paradise Cruises, Ltd.*, 888 F.Supp. 120, 122 (D.Haw.1995) (finding the case did not relate solely to scuba diving but also to a traditional maritime activity because the plaintiff alleged negligence against the vessel and the cruise operator); *Strickert v. Neal*, 2015 WL 7737312 (D. Haw. Nov. 30, 2015) (in a snorkeling excursion death case parties agreed that there was a nexus to a traditional maritime activity so that court exercised admiralty jurisdiction over the boat captain, dive operator and the boat);

---

[2] Yellow Charter does not suggest a general characterization of the activity.

*In re Matter of Pacific Adventures, Inc.*, 5 F. Supp. 2d 874, 878 (D. Haw. 1998) (finding maritime jurisdiction for claims brought by an injured scuba diver against the dive guide because the allegations against him as an individual "involve the operation of a vessel and the failure to administer first aid, activities that establish a substantial relationship with traditional maritime activity"); *Olivelli v. Sappo Corp., Inc.*, 225 F. Supp. 2d 109, 114-115 (D.P.R. 2002) (finding maritime jurisdiction in a scuba diving death case brought against the dive instructor and the beach resort where the scuba class was taught because the complaint included allegations that the boat was not adequately equipped and the crew was not properly trained for dealing with a scuba accident).[3]

In the complaint Specker alleges Kazma was negligent because he was allegedly intoxicated during the shark feeding and improperly and negligently directed the divers, including Specker, to an unsafe area, and that he led a shark directly to Specker, which bit her. Compl. ¶ 10. She alleges the Cetus Specula was negligent by having Kazma in an intoxicated state, creating an unsafe condition, failing to operate safely, and failing to properly hire, train and supervise its crew. Compl. ¶¶ 12, 14-15. Specker also alleges that the Cetus Specula did not carry proper first aid or medical equipment. Compl. ¶ 13. Specker asserts no factual allegations against Yellow Charter as to negligence.

Here, Kazma runs a shark diving expedition business where he charters boats and ferries passengers out to dive sites in the ocean. *See* Kazma Decl. Yellow Charter is a boat services company that provides "transportation to and from advanced shipwreck dive sites." *See* Kazma Decl., Ex. 2. Cetus Specula is the actual vessel that transported Specker to sea. At least one of the alleged tortfeasors—e.g. the Cetus Specula—is engaged in traditional maritime activity. *See Foremost Ins. Co. v. Richardson*, 457 U.S.

---

[3] Kazma urges the court to following the holdings in *In re Complaint of Kanoa, Inc.*, 872 F. Supp. 740 (D. Haw. 1994) and *Tancredi v. Dive Makai Charters*, 823 F. Supp. 778 (D. Haw. 1993) because those are scuba diving injury cases that declined to apply admiralty jurisdiction because the dive boats did not play a role in the accident. But after *Grubart*, the reasoning in those cases no longer applies. *See McClenahan*, 888 F.Supp. at 122.

668, 673 (1982) (finding that the negligent operation of a vessel on navigable waters has a sufficient nexus to traditional maritime activity); *see Hambrook v. Smith*, 2015 WL 3480887, *5 (D. Haw. June 2, 2015) (finding a substantial relationship to a traditional maritime activity in a scuba diving death case because the plaintiff alleged negligence on board the vessel for failure to properly administer first aid at sea).[4]

Under *Grubart* and *Taghadomi*, the inclusion of just one tortfeasor renders all Defendants subject to maritime jurisdiction. Here, the activity is not just a scuba dive from shore but is a dive expedition that involved several distinct yet interrelated parties. All Defendants benefited from Specker paying a fee to travel in a boat in the ocean to a location where the dive leader guided her and others on a cage-free expedition with sharks. Her activity, and consequent injury, depended on the relationship of the parties; she could not have participated in the activity if any of the four named parties were absent. Accordingly, this court finds the relationship test satisfied. There is maritime jurisdiction over all Defendants in this case.

### C. **Yellow Charter's Rule 12(b)(6) Motion.**

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[4] Given the number of cases that find maritime jurisdiction for scuba dive accidents, scuba diving itself may also be related to a traditional maritime activity. *See McLenahan*, 888 F. Supp. at 121-123 ("even if scuba diving by itself is not related to a traditional maritime activity as suggested by *Tancredi* and *Kanoa*, here there were allegations of negligence on the part of the vessel and of Paradise Cruises, Inc. (claims which surely have substantial relationships with traditional maritime activity)").

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Id.* at 678.  Although the pleading standard announced by Rule 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).  A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*

Rule 12(b)(6) requires that a motion to dismiss for failure to state a claim be made before the service of a responsive pleading.  *See Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988) (motion to dismiss under Rule 12(b) held untimely when filed after answer).  As a result a court may dismiss as untimely a motion to dismiss the complaint filed after the answer is filed.  *Id.*  Here, Yellow Charter already filed its answer.  Its motion to dismiss is untimely.  It has other remedies it can pursue, though, as described in Rule 12.

### IV. Conclusion

The court **DENIES** Kazma's and Mako's Rule 12(b)(1) motion to dismiss, **DENIES** Cetus Specula's and Yellow Charter's Rule 12(b)(1) motion to dismiss, and **DENIES** Yellow Charter's Rule 12(b)(6) motion to dismiss.

**IT IS SO ORDERED.**

Dated:  July 20, 2016

Hon. Nita L. Stormes
United States Magistrate Judge